CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 27 2015

JULIA C. DUDLEY, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Criminal Action No: 1:11-cr-00025-1 |
| v. | (Civil Action No: 1:14-cv-80744) |
| | **MEMORANDUM OPINION** |
| **JAMES EDWARD GOFF,** | |
| | By: Hon. Glen E. Conrad |
| Defendant. | Chief United States District Judge |

James Edward Goff, a federal inmate proceeding pro se, has moved to vacate, set aside, or correct his sentence, under 28 U.S.C. § 2255. The government has filed a motion to dismiss, and Goff has responded, making this matter ripe for consideration. Upon review of the record, the court concludes that Goff has not stated any claim for relief under § 2255 and that the government's motion to dismiss must be granted.

I.

On July 7, 2011, a federal grand jury sitting in Abingdon, Virginia charged Goff in a two-count indictment with possessing explosives after having been convicted of a felony, in violation of 18 U.S.C. § 842(i)(1), and improperly storing explosives, in violation of 18 U.S.C. § 842(j).[1] On November 7, 2011, following a one-day trial, a jury found Goff guilty on both counts. The evidence at trial was that on October 17, 2010, Goff, a convicted felon, arrived at a storage shed located on property owned by his mother, Erma Goff.[2] (Trial Tr. at 23-26, ECF No. 90.) Goff unloaded three boxes from his vehicle and cautiously carried them into the storage shed. (Id. at 27.) William Cole, who lived on property adjacent to the storage shed, observed Goff carrying the boxes and noticed that one of the boxes had wires the size of

---

[1] The explosives consisted of "3 boxes of Hercules Superdet static-resistant delay electric blasting caps." (Indictment at 1, ECF No. 4.)

[2] Erma Goff is also known as Joyce Goff. (Trial Tr. at 23, ECF No. 191.)

an "ink pen filler" stringing out the top. (Id.) The following day, Cole, believing that the boxes contained blasting caps, looked through the window of the storage shed and observed three boxes of blasting caps. (Id. at 30.) Cole called 911, and a deputy from the Tazewell County Sheriff's Office responded. (Id. at 53.) The deputy looked through the window of the storage shed and observed the boxes of blasting caps. (Id. at 54.) The deputy testified that he could tell by "the markings on the boxes, the size, shape" that the boxes were the type that contained blasting caps. (Id. at 55.) Thereafter, the deputy spoke with the owner of the property, Erma Goff, and obtained permission to search the storage shed.[3] (Id. at 56.) Upon entering the storage shed, the deputy opened the boxes and confirmed that the boxes contained blasting caps. (Id. at 57.)

At the sentencing hearing on February 6, 2012, the court adopted the presentence investigation report ("PSR"). The PSR found that Goff had a total offense level of 20 and a criminal history category of V. The advisory guideline range for imprisonment was 63-78 months. U. S. Sentencing Guidelines Manual, Chapter 5, Part A. The court sentenced Goff to 36-months imprisonment.[4] (ECF No. 67.) The court also imposed a 30-month term of supervised release.[5] The United States Court of Appeals for the Fourth Circuit affirmed Goff's convictions.

---

[3] Erma Goff, and her daughter, Peggy Goff lived on the property at the time of the incident. (Trial Tr. at 69, ECF No. 90.) Erma Goff is now deceased.

[4] The court granted Goff's oral motion for a variance. (ECF No. 69.)

[5] According to correspondence received from Goff, he completed his term of imprisonment on October 23, 2014; however, he is still under supervised release. (ECF No. 67.) Thus, the court retains jurisdiction of his § 2255 motion. See United States v. Pregent, 190 F.3d 279, 283 (4th Cir. 1999) ("A prisoner on supervised release is considered to be 'in custody' for purposes of a § 2255 motion.") (citing Maleng v. Cook, 490 U.S. 488, 491 (1989)).

In his § 2255 motion, Goff claims that counsel provided ineffective assistance by failing to (1) move to suppress evidence that resulted from an unlawful search; (2) conduct adequate pretrial investigation; and (3) adequately preserve for appeal objections related to the government's cross-examination of defense witness Lewis Lester.

## II.

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish a claim of ineffective assistance of counsel, petitioner must satisfy the two-pronged test set forth in Strickland.[6] The first prong of Strickland requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," meaning that counsel's representation fell below an objective standard of reasonableness. Id. at 687-88. Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. Id. at 689; see also Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

The second prong of Strickland requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 at 694. Goff's claims of ineffective assistance of counsel do not show both the deficient performance and resulting prejudice required by Strickland.

---

[6] If a petitioner has not satisfied one prong of the test, a court does not need to inquire whether he has satisfied the other prong. Id. at 697.

3

## A. Motion to Suppress

Goff claims that counsel provided ineffective assistance by failing to file a motion to suppress evidence that resulted from a deputy's search of the storage shed where the explosives were located. In support, Goff states that the deputy's "initial viewing of the shed's interior was conducted outside the bounds of the Fourth Amendment." (Mot. to Vacate at 7, ECF No. 94.) In the initial viewing, the deputy looked into the storage shed's windows and observed boxes containing the blasting caps. Goff also argues that, "even if [his mother or sister] voluntarily gave [the deputy] permission to search the interior of the shed, their consent to search an area to which they had mutual access with the petitioner" was not effective consent to search the closed boxes, which the deputy knew belonged to Goff. (Reply to Mot. to Dismiss at 3, ECF No. 101.)

To show ineffective assistance of counsel based on a failure to file a motion to suppress evidence, Goff must show actual prejudice by demonstrating that a motion to suppress would have been meritorious. See Ford v. United States, No. RDB-12-2848, 2013 U.S. Dist. LEXIS 85871 at *10, 2013 WL 3155447, at *4 (D. Md. 2013) (citing Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)); see also United States v. Madewell, 917 F.2d 301, 304 (7th Cir. 1990) (holding that there was no ineffective assistance of counsel because any motion to suppress was unlikely to prevail). Goff fails to demonstrate that a motion to suppress would have been meritorious because he has not established any legitimate expectation of privacy in the storage shed. "It is axiomatic that 'suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.'" United States v. Gray, 491 F.3d 138, 144 (4th Cir. 2007) (quoting

4

Alderman v. United States, 394 U.S. 165, 171-72 (1969)); see also Rakas v. Illinois, 439 U.S. 128, 143 (1978) ("[C]apacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.") (citation omitted). "To be legitimate, an expectation of privacy must be objectively reasonable: it must flow from 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" Gray, 491 F.3d at 145 (quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998)).

"A person may have a legitimate expectation of privacy in a place or object he does not own." United States v. Castellanos, 716 F.3d 828, 846 (4th Cir. 2013) (quoting United States v. Perez, 689 F.2d 1336, 1338 (9th Cir. 1982) (citation omitted)). In Castellanos the United States Court of Appeals for the Fourth Circuit noted, "[I]n determining whether a person has a reasonable expectation of privacy in a particular place or object, courts consider the totality of the circumstances, taking into account":

(1) Whether the person claims an ownership or possessory interest in the property;
(2) The individual's control of the area searched;
(3) The individual's efforts to ensure his privacy in the object or area;
(4) The purposes for which the individual uses the property;
(5) The individual's historical use of the property; and
(6) Society's common understanding as to areas that deserve Fourth Amendment protection.

Id. (internal citations and quotations omitted). The defendant bears the burden of proving standing to challenge a search under the Fourth Amendment. United States v. Stevenson, 396 F. 3d 538, 547 (4th Cir. 2005).

5

Goff did not own the storage shed, nor did he live on the property where it was located. The storage shed had broken windows, and was not locked. (Trial Tr. at 81, 115, ECF No. 90.) Goff merely had permission from his mother to store some belongings in the storage shed.[7] (Id. at 71.) Under Castellanos, this does not create a legitimate expectation of privacy in the storage shed. Law enforcement officers may search an individual or his property without a warrant, so long as the individual voluntarily consents to the search, Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973), and the deputy obtained the property owner's consent prior to searching the storage shed.[8] See United States v. Peterson, 524 F.2d 167 (4th Cir. 1975) (court found that a mother had authority to consent to the search of a room in her home that her son, who was the target of the search, occupied as a member of the household).

Goff's argument that, even if his mother had authority to consent to the search of the storage shed, such authority did not extend to the boxes, also fails. It is true that authority to search the storage shed would not necessarily extend to closed boxes inside the shed. "While authority to consent to search of a general area must obviously extend to most objects in plain view within the area, it cannot be thought automatically to extend to the interiors of every discrete enclosed space capable of search within the area." United States v. Block, 590 F.2d 535, 540 (4th Cir. 1978). However, the deputy had authority to search the boxes within the storage shed because the boxes were clearly marked as containing blasting caps. In United States v. Williams, the Court of Appeals reasoned that "when a container is not closed, or

---

[7] However, there was no evidence at trial that he had permission to store the blasting caps.

[8] Goff states that his mother was "in failing health," and she was not competent to consent to the search of her property. (Reply to Mot. to Dismiss at 4, ECF No. 101.) However, he provides no evidence that his mother was not capable of consenting to the search.

6

transparent, or when its distinctive configuration proclaims its contents, the container supports no reasonable expectation of privacy and the contents can be said to be in plain view." 41 F.3d 192, 197 (4th Cir. 1996) (quoting United States v. Corral, 970 F.2d 719, 725 (10th Cir. 1992)) (seizure and search of a container is supported by the plain view doctrine when "the contents of a seized container are a foregone conclusion."); see also United States v. Eschweiler, 745 F.2d 435, 440 (7th Cir. 1984) (police could lawfully open envelope that clearly indicated it contained safe-deposit box key).

The Sixth Amendment does not require counsel to raise a meritless argument. See Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010). Because a motion to suppress would not have been successful, Goff has failed to plausibly allege deficient performance. See Strickland, 466 U.S. at 687-91. Accordingly, the court will dismiss this claim.

### B. Pretrial Investigation

Goff claims that counsel was ineffective because he did not conduct adequate pretrial investigation. Specifically, Goff claims that counsel failed to obtain a fingerprint analysis on the boxes containing the blasting caps, failed to obtain point of sale information related to the blasting caps, and failed to develop and present evidence of Cole's "enmity toward [him]." (Mot. to Vacate at 8, ECF No. 94.)

Goff speculates that "a reasonable attorney [would have] investigate[d] whether anyone else could be identified as possessing the blasting caps" by performing a fingerprint analysis. (Id. at 10.) In support, he states that both former property owner Estill Taylor, as well as neighboring property owner Cole, had access to blasting caps. Likewise, Goff speculates that "point of sale records of distribution to a company associated with either Mr. Taylor or Mr. Cole would substantially affect a jury's view of the likely origin of the blasting

7

caps." (Id. at 11.) However, Goff does not provide any specific evidence to support his theories, and his conclusory allegations are insufficient to state a claim.[9] See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."). Further, Goff provides no information regarding the feasibility of performing a fingerprint analysis or obtaining point of sale records. When considering a claim for ineffective assistance, the court must understand the practical limitations and tactical decisions that counsel faced, and review counsel's decisions with "a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691; see also Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1997) (courts should be reluctant to second guess the tactics of trial lawyers.) Accordingly, the court will dismiss these claims.

Finally, Goff speculates that "evidence that Mr. Cole bore substantial animosity toward [him] would have had a significant effect on the jury's evaluation of the rest of [Cole's] testimony." (Mot. to Vacate at 11, ECF No. 94.) Goff claims that "Mr. Cole repeatedly told people that [Goff] was trying to take the front of his house." (Id.) This claim lacks merit because counsel did question Cole during cross-examination regarding whether he had a dispute with Goff regarding the property line. (Trial Tr. at 43-46, ECF No. 90.) Further, Goff fails to provide any specific evidence of Cole's alleged "substantial animosity." Goff's sister testified at trial that neither she, nor Goff, nor her mother had any significant

---

[9] Moreover, Goff's sister testified at trial that she first observed the boxes of blasting caps in the storage shed on October 17, 2010. Thus, there was no clear evidence at trial that the blasting caps had been placed in the storage shed by the previous owner. Nor was there any evidence that Cole had placed the blasting caps in the storage shed.

8

problems with Cole. (Trial Tr. at 69, ECF No. 90.) She also agreed during her testimony that the issue regarding the property line was "not a big deal." (Id. at 70.) Goff's conclusory allegations regarding Cole's alleged animosity toward him are insufficient to state a claim of ineffective assistance of counsel. See Nickerson, 971 F.2d at 1136. Accordingly, the court will dismiss this claim.

### C. Cross Examination

Goff claims that counsel failed to preserve objections related to the cross-examination of defense witness Lewis Lester, preventing appellate review. Goff claims that the government "repeatedly asked Mr. Lewis, directly and indirectly, about his previous felony convictions." (Mot. to Vacate at 13, ECF No. 94.) Goff states that Lewis had no felony convictions, and the government's questions were intended to discredit Lewis's testimony by creating the false impression that he had been convicted of a felony.

Goff's claim lacks merit because counsel did object to the government's line of questions as to whether Lewis had previously been charged or convicted of a felon, and thus the matter was preserved for appellate review. Counsel stated, "My objection is to charging information. If there's conviction information, that's different, but charging information should not be used." (Trial Tr. 127-128, ECF No. 90.) Thereafter, counsel argued in Goff's "renewed motion for judgment of acquittal or a new trial" as follows:

> The government asked Mr. Lester, repeatedly over defense objection, whether he had been **charged** with felony crimes in Florida. This was clearly impermissible because Federal Rule of Evidence 609 limits cross-examination as to **confirmed criminal convictions, and those which are serious and recent** . . . . thus, the government introduced prejudicial error into this record by its reference to unproven charging information.

9

(ECF No. 56.) Finally, counsel raised this issue on appeal, stating in his brief to the Court of Appeals, "The defense raised these violations of FRE 608 and 609 (improper cross-examination based on a rap sheet) in its post-trial motion. While this issue has not been fully briefed, this Court retains its authority to recognize a plain violation of the Federal Rules of Evidence which has prejudiced the defense." Brief of Appellant at 22, n. 4, United States v. Goff, 517 F. App'x 120 (4th Cir. 2013). The Court of Appeals affirmed the district court's denial of Goff's motion for judgment of acquittal or a new trial. Goff, 517 F. App'x at 127. Because counsel did object to the government's cross-examination of Lester, Goff fails to show that counsel provided ineffective assistance. Accordingly, this claim will be dismissed.

## III.

For the reasons stated herein, the court will grant the government's motion to dismiss. An appropriate order will be entered this day.

**FILED:** This 27th day of May, 2015.

*/s/ John Conrad*
Chief United States District Judge